## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | | |
|---|---|---|
| DANIEL FITTING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 7:21-cv-114 |
| | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC.; and | § | |
| JP MORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Daniel Fitting brings this action against Defendants Experian Information Solutions, Inc., and JP Morgan Chase Bank, N.A. and alleges:

## Introduction

1.      This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (FCRA) and the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA).

2.      In or around February 2021, an individual took over Plaintiff's JP Morgan Chase Bank credit card while Plaintiff was on vacation out of state. There was approximately $35,100 in fraudulent charges made to the card.

3.      Plaintiff brings claims for actual and punitive damages against Defendants for their claims or attempts to enforce a debts when it is known that

1

the debts are not legitimate, for their inaccurate reporting, and for their failure to investigate Plaintiff's disputes of that inaccurate reporting.

## Jurisdiction, Venue and Parties

4.   This Court has original jurisdiction over Plaintiff's claims arising under the FCRA, and TILA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5.   Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Texas, this suit arises out of Defendants' specific conduct with Plaintiff in Texas, and Plaintiff was injured in Texas.

6.   Venue is appropriate in the United States District Court for the Western District of Texas, Midland Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiff's claims occurred in Midland County, Texas.

7.   Plaintiff is a natural person residing in Midland County, Texas.

8.   Plaintiff is, and was at all relevant times a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.   Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency formed in Ohio and headquartered in Costa Mesa, California. Experian conducts business in the State of Texas through its registered agent, CT Corporation System, located at 1999 Bryan Street, #900, Dallas, TX 75201.

10.     Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

11.     Defendant JP Morgan Chase Bank, N.A. ("Chase") is a national association and its registered agent is CT Corporation System, located at 1999 Bryan Street, #900, Dallas, TX 75201.  TD Bank regularly conducts business in the State of Texas.

## General Allegations

12.     Plaintiff went out of town to Birmingham, Alabama from February 12 – February 19, 2021.

13.     While out of town, Plaintiff realized that his Chase card had been fraudulently taken over.

14.     Plaintiff's Chase card was fraudulently taken over and used to purchase Chumba Gold Coins online casino games, totaling approximately $35,100 in fraudulent charges.

15.     On February 12, 2021, after arriving in Birmingham, Alabama, Plaintiff attempted to use his Chase card to check into his hotel.

16.     When his Chase card was denied while checking into his hotel on February 12, 2021, Plaintiff did not think anything of it. Plaintiff assumed the card was denied due to being out of state, gave the woman at the hotel his debit card instead, and thought to himself that he should receive a text from Chase asking him to approve the purchase shortly.

17.     Later that evening, Plaintiff received a text from Chase regarding a $20 charge. Plaintiff approved it assuming it was a delayed alert from the hotel earlier in the day.

18.     Plaintiff continued to use his credit card in Birmingham from February 12th through February 16.

19.     On February 16, 2021, Plaintiff's card was declined at a restaurant in Birmingham.

20.     On February 16, 2021, following his card being declined, Plaintiff called Chase right after his card was denied at a restaurant in Birmingham.

21.     During his February 16, 2021 call with Chase, Plaintiff first learned of the fraudulent activity on his account.

22.     During his February 16, 2021 call with Chase Bank, the representative at Chase told Plaintiff not to worry that they would take care of removing the fraudulent purchases from his account statement.

23.     Plaintiff's account was not restored following his February 16, 2021 call with Chase.

24.     On March 9, 2021, Plaintiff filed a report with the Midland Texas Police, case number 21-0309-009 in regard to the fraud on his Chase card.

25.     In or around March of 2021, Chase responded and denied Plaintiff's first fraud claim, validating the purchases.

26.     In or around March of 2021, Plaintiff contacted Chase and filed a second fraud claim.

27.    On or around March 18, 2021, Chase responded and denied Plaintiff's second fraud claim, again validating the purchases.

28.    In or around March of 2021, Plaintiff contacted Chase and filed a third fraud claim.

29.    Once again, on or around April 7, 2021, Chase responded and denied Plaintiff's third fraud claim, again validating the purchases.

30.    On April 14, 2021, Plaintiff mailed detailed dispute letters to the Credit Reporting Agencies, specifically Defendant Experian.

31.    In these letters Plaintiff explained in detail exactly what happened with his Chase card. He provided the credit reporting agencies, and through them Chase, with his contact information and invited them to contact him regarding this fraudulent activity.

32.    Plaintiff received dispute results from Experian dated April 28, 2021.

33.    In their April 28, 2021 dispute results, Experian responded verifying the fraudulent activity on Plaintiff's Chase account.

34.    Despite Plaintiff having given notice to Chase of the fraud, Chase has submitted several adverse credit reports to the credit reporting agencies, including Defendant Experian, regarding Plaintiff. Chase's actions in submitting these adverse credit reports constitute a violation of the TILA.

35.    As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities,

credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendants, as well as emotional distress.

36.   Plaintiff's damages are continuing.

37.   All necessary conditions precedent to the filing of this action have occurred.

**COUNT I**
**(Violations of FCRA § 1681s-2(b) by Chase Bank)**

38.   Plaintiff re-alleges and incorporates paragraphs 1 through 37, including all subparts, as if fully set forth herein.

39.   Chase is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher of information" as codified at 15 U.S.C. § 1681s-2.

40.   Chase published false information regarding Plaintiff's alleged debt obligation and the Chase account to Experian and through Experian to all of Plaintiff's potential lenders.

41.   On one or more occasions within the past two years, by example only and without limitation, Chase violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies along with Plaintiff's disputes.

42.   When Plaintiff mailed his detailed, written disputes and enclosures to Experian, those consumer reporting agencies (CRAs) used a dispute system named

"e-OSCAR" which has been adopted by the CRAs and by their furnisher-customers such as Chase.  It is an automated system and the procedures used by the CRAs are systemic and uniform.

43.     When a CRA like Experian receives a consumer dispute, it (usually via an offshore, outsourced vendor) translates that dispute into an Automated Credit Dispute Verification or "ACDV" form.

44.     The ACDV form is the method by which Chase has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

45.     Based on the manner in which Experian responded to Plaintiff's disputes, representing that Chase had verified the supposed accuracy of its reporting, Plaintiff alleges that Experian did in fact forward Plaintiff's disputes via ACDVs to Chase.

46.     Chase understood the nature of the Plaintiff's disputes when it received the ACDVs from Experian.

47.     Given the detailed information Plaintiff provided Chase on multiple occasions, Chase should have understood that Plaintiff was the victim of identity theft and that his account had been taken over by a wrongdoer. Despite this, Chase failed to conduct a reasonable investigation and repeatedly insisted its reporting was accurate.

48.     In his detailed dispute letters, Plaintiff provided Chase his phone number and told Chase to feel free to call him but Chase chose not to call Plaintiff

to gather any additional information before responding to the ACDVs at issue in this case.

49.     In his detailed dispute letters, Plaintiff provided Chase his email address told Chase to feel free to email him but Chase chose not to email Plaintiff to gather any additional information before responding to the ACDVs at issue in this case.

50.     If there was any additional information Chase needed in order to conduct a reasonable investigation of Plaintiff's disputes in this case, Chase did nothing to explain to Plaintiff what additional information it needed before responding to the ACDVs at issue. Nor did Chase make any attempt to obtain any additional information from Plaintiff.

51.     Chase violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of Chase's representations; by failing to review all relevant information regarding same; by failing to correctly report the results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Chase's representations to the consumer reporting agencies.

52.     Chase violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Experian after Chase had been notified of the dispute and that the information was inaccurate.

53.     As a result of Chase's conduct, action and inaction, Plaintiff suffered damage by loss of time due to Plaintiff's attempts to correct the inaccurate

information; stress; and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

54.     Chase's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Chase was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against JP Morgan Chase Bank, N.A. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
### (Violations of the Truth in Lending Act § 1643 Chase Bank)

55.     Plaintiff re-alleges and incorporates paragraphs 1 through 37, including all subparts, as if fully set forth herein.

56.     At all material times herein, Plaintiff is a "person," "consumer," and "card holder" as those terms are defined by the TILA. 15 U.S.C. § 1602(e), (i), and (n).

57.     At all material times herein, Defendant Chase is a "person" and "creditor" subject to the TILA. 15 U.S.C. § 1602(e) and (g).

58.     At all material times herein, Plaintiff's Chase account is an "open end consumer credit plan" as defined by the TILA. 15 U.S.C. § 1602(j).

59.     After learning of the fraudulent use of his Chase card, Plaintiff gave Chase timely notice of that fraud.

60.     Under 15 U.S.C. § 1643, Plaintiff's liability for the unauthorized use of the Chase card is limited to $50.00.

61.     On or around February 16, 2021, Plaintiff notified Chase that certain transactions on his Chase card were unauthorized and that he received no benefit from the transactions.

62.     The person who stole Plaintiff's Chase card was not authorized to withdraw funds or to make purchases through the use of Plaintiff's Chase card.

63.     Because Plaintiff is the victim of theft and retained no benefit from the unauthorized charges, his liability for the unauthorized charges is limited to, at most, $50.00.

64.     Chase is in violation of the TILA, 15 U.S.C. § 1643 by attempting to collect the unauthorized amounts in excess of $50.00.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant JP Morgan Chase Bank, N.A. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT III
## (Violations of the FCRA § 1681i(a) by Experian)

65.     Plaintiff re-alleges and incorporates paragraphs 1 through 37, including all subparts, as if fully set forth herein.

66.     When Plaintiff disputed the inaccurate account information with non-party Trans Union, Trans Union deleted the information.  When Plaintiff provided Defendant Experian with the same detailed information, Experian failed to properly investigate and remove the inaccurate information regarding the Chase account.

67.     Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

68.     Experian failed to investigate Plaintiff's dispute despite Plaintiff providing all the necessary information. Experian chose to ignore all the information provided in the dispute and rely solely on the information provided by Chase. Plaintiff even provided his contact information, but Experian made no attempt to contact him to obtain any additional information if any was needed.

69.     Experian chose to ignore this information and simply parroted the information provided by the furnisher.

70.     Discovery will show that when Experian receives an ACDV response from a furnisher, the consumer's credit file is automatically updated with whatever information the furnisher has provided. No human being at Experian reviews the ACDV response to conduct any independent investigation whatsoever.

71.     Experian's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant Experian Information Solutions, Inc. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, for pre-judgment and post-judgment interest at the legal rate, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## <u>COUNT IV</u>
### (Violations of the FCRA § 1681e(b) by Experian)

72.     Plaintiff re-alleges and incorporates paragraphs 1 through 37, including all subparts, as if fully set forth herein.

73.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

74.     Plaintiff did not make the disputed charges on the Chase account, nor did he authorize anyone else to make those charges. Despite this, Experian's procedures allowed for the account to be reported on Plaintiff's Experian credit report.

75.     As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damages by cost of communications for the many hours spent attempting to remedy the error, stress associated with a reduction in available credit, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit reduction.

76.     Experian's conduct, action, and inaction was willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant Experian Information Solutions, Inc. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, for pre-judgment and post-judgment interest at the legal rate, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

Respectfully submitted,

*s/ Octavio "Tav" Gomez*
Octavio "Tav" Gomez
Florida Bar No.: 0338620
MORGAN & MORGAN, PA
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile:  (813) 222-2490
TGomez@ForThePeople.com
JKersey@ForThePeople.com
AWynne@ForThePeople.com
*Attorney for Plaintiff*

14